## RAILROAD COMPANY *v.* SWASEY.

1. A decree of foreclosure and sale is not "final" in the sense which allows an appeal from it so long as the amount due upon the debt must be determined, and the property to be sold ascertained and defined.

2. Hence, a decree is not "final" in such sense, where the court by an interlocutory order declares that certain shares in a railroad held by a State, are pledged for the payment of certain interest-bearing bonds of the State and the interest on them; and that the plaintiff and others whom he represents, as holders of such bonds, are entitled to have their respective proportions of the stock, or so much thereof as may be necessary, sold in order to pay the interest which is due to them; and orders a master to take an account of such unpaid interest and of what will be due by a day named, and also of the proportion of stock that may be equitably applicable to the payment of said interest found due to each plaintiff, and *make report to the court.* And orders further that unless by a day named it be made to appear to the court that the State has levied and provided for the collection of a tax sufficient to pay, or have otherwise secured the payment of, its arrears of interest, then so much of the stock of the State in the road, apportioned to the plaintiff and those he represents as may be necessary to pay off and discharge said arrears of interest, shall be sold to the highest bidder for cash. And after giving directions as to the manner in which a sale is to be made, at the end of all adds: "*And this cause is held for further directions.*"

3. This is but an interlocutory order announcing the opinion which the court has formed as to the rights of the parties, and the principles of the decree it would finally render, leaving the entry of the final decree in form to be made when the amount due has been ascertained and an apportionment of the stock made.

[*] 3 Stat. at Large, 695.

4. This court calls the attention of the Circuit Courts to what was said by Taney, C.J., in *Forgay* v. *Conrad* (6 Howard, 201), as to the care which ought to be exercised in the preparation of decrees of foreclosure; and observes that much time of this court and expense of litigants will be saved if more attention is given to the form of decrees when entered.

ON motion to dismiss, for want of jurisdiction, as not "final," an appeal from the Circuit Court for the Eastern District of North Carolina.

The case was thus:

The State of North Carolina by acts of her legislature passed in January, 1849, and 1855, subscribed for stock in the North Carolina Railroad Company, of the par value of $3,000,000. To pay for this stock she borrowed money and issued her bonds and certificates of debt with coupons for interest, redeemable in thirty years, with interest, payable semi-annually. In the laws authorizing these subscriptions and loans, she pledged and appropriated for the payment of the bonds or certificates the faith of the State, the stock and all dividends which might be declared thereon.

Of a large amount of these bonds one Swasey became the holder.

From the year 1869, the State received the dividends upon the stock, and appropriated the money to purposes other than the payment of the interest. A large amount of interest coupons being unpaid, a bill in equity was now filed by Swasey for himself and on behalf of several other bondholders, praying the Circuit Court of the United States for the Fourth District,

1st. To restrain the treasurer of the railroad company from paying any future dividends to the State treasurer.

2d. To restrain the State treasurer from receiving any future dividends.

3d. For the appointment of a receiver, &c.

After argument before the circuit judge, June 19th, 1871, he awarded the injunction, and appointed Mr. J. B. Batcheler a receiver.

Several dividends were accordingly paid to the receiver, and by him distributed, under various orders of the court.

It becoming evident that the arrears of interest could not be paid without a sale of the stock, a motion for a sale was made by the plaintiffs, and on that motion the court entered a decree as follows:

" This cause coming on for further order, the court doth declare:

" 1st. That by the terms of the charter of the North Carolina Railroad Company, and the amendments thereto, the shares of the stock in said company, belonging to the State of North Carolina, meaning thereby the shares and all dividends thereon, are pledged as security for the payment of the certificates of debt in such charter and amendments provided for, and for every part of such certificates, meaning thereby the interest accruing upon the principal thereof, as well as the principal. .

" 2d. That the plaintiff, and those he represents, as owners of such certificates of debt or bonds, or of coupons detached therefrom, now hold large amounts of the past due coupons of said certificates of debt or bonds, and that they are entitled to have their respective proportions of the stock, or so much thereof as may be necessary, sold, in order to pay such past due interest. .

" Upon motion of counsel for the plaintiffs, it is therefore ORDERED and DECREED, that J. B. Batcheler, the commissioner heretofore appointed in this suit, take an account of such unpaid interest, and of such further interest as will be due on or before the 1st day of April, 1875, and also of such proportion of the said stock of the State of North Carolina, in said North Carolina Railroad Company, as may be equitably applicable to the payment of said interest found due to each of the said plaintiffs respectively, and *that he make report to the next term of this court.*

" It is further ordered and decreed, that unless on or before the 1st day of April, 1875, it shall be made to appear to this court that the said State of North Carolina has levied a tax sufficient to pay the said arrears of interest, and has provided for its collection, or shall otherwise have paid or secured the payment of the said past due interest, then so much of the said stock of the State in the said North Carolina Railroad Company, apportioned to the plaintiff, and those he represents, as may be necessary to pay off and discharge said arrears of interest, shall be sold to the highest bidder for cash."

Directions are then given as to the manner in which the sale is to be made, and at the end of all are these words:

"*And this cause is held for further directions.*"

From this decree the North Carolina Railroad Company took an appeal, and this appeal it was which it was now moved to dismiss as not being "final," and therefore not within the expressions of the act of March 2d, 1803, which gives an appeal to this court only from "final judgments or decrees."

*Messrs. W. J. Budd and F. C. Brewster, in support of the motion to dismiss:*

A final decree in equity is defined by a very good text-writer, Mr. Daniells, to whose numerous authorities we refer without citing them, to be one which definitively adjudges the whole subject-matter; an interlocutory decree, one which disposes of some parts and reserves others for future decision.*

The present decree is not final, when tested by these principles laid down by Daniells.

*Messrs. W. H. Battle and W. N. H. Smith, contra:*

The decree is final and an appeal lies to this court.

It is a decree of foreclosure and sale, and disposes fully of the moneys arising upon a sale, leaving only to be performed, under the reference, such ministerial duties, in furtherance of the decree, as would secure the full benefits of its complete execution to the plaintiffs. Nor is it affected by the provision which suspends action under the decree, if "on or before the 1st day of April following the State of North Carolina shall levy a tax sufficient to pay" the interest, or shall otherwise pay or secure the same, since in all decrees of foreclosure of mortgages a day of payment is given, and if payment is made the sale is arrested, because

---

* Daniells's Chancery Practice, American edition of 1846, vol. ii, p. 1199 and notes.

in either case the same object is obtained, the satisfaction of the debt.

We may admit that the decree is not "final" *ad unguem;* positively, completely, and perfectly final in all details. But it is not necessary to give an appeal that it should be so. In *Bronson* v. *Railroad Company,*\* a motion was made to dismiss an appeal from a decree of foreclosure in a mortgage; the ground of the motion being there as here, that such a decree was not final. But this court say:

"This decree is not final in the strict technical sense of the word, for something yet remains for the court below to do. But, as was said by Chief Justice Taney in *Forgay* v. *Conrad,*† this court has not therefore understood the words, *final decree,* in this strict and technical sense, but has given them a more liberal, and, as we think, a more reasonable construction, and one more consonant to the intention of the legislature.

"In the case of *Ray* v. *Law*‡ and *Whiting* v. *The Bank of the United States,*§ this court has decided that a decree for the sale of mortgaged premises is a final decree from which an appeal lies. The court rested their decision on the ground that when the mortgage was foreclosed and a sale ordered, the merits of the controversy were finally settled and the subsequent proceedings were simply a means of executing the decree."

The CHIEF JUSTICE delivered the opinion of the court.

An appeal may be taken from a decree of foreclosure and sale when the rights of the parties have all been settled and nothing remains to be done by the court but to make the sale and pay out the proceeds. This has long been settled.‖ The sale in such a case is the execution of the decree. By means of it the rights of the parties, as settled, are enforced.

But to justify such a sale, without consent, the amount

\* 2 Black, 531.

† 6 Howard, 203; and see, to the same effect, Ray *v.* Law, 3 Cranch, 179; Whiting *v.* Bank of United States, 13 Peters, 11; The Palmyra, 10 Wheaton, 503; Wabash and Erie Canal *v.* Beers, 1 Black, 54.

‡ 3 Cranch, 179.            § 13 Peters, 15.

‖ Ray *v.* Law, 3 Cranch, 179; Whiting *v.* Bank of the United States, 13 Peters, 15.

due upon the debt must be determined and the property to be sold ascertained and defined. Until this is done the rights of the parties are not all settled. Final process for the collection of money cannot issue until the amount to be paid or collected by the process, if not paid, has been adjudged. So, too, process for the sale of specific property cannot issue until the property to be sold has been judicially identified. Such adjudications require the action of the court. A reference to a master to ascertain and report the facts is not sufficient. A master's report settles no rights. Its office is to present the case to the court in such a manner that intelligent action may be there had, and it is this action by the court, not the report, that finally determines the rights of the parties.

With these well-settled principles as our guide, it is easy to see that the decree here appealed from is not final. The amount of the debt which the State must pay in order to stop the sale has not been determined, neither has it been determined what amount of stock may be sold if the debt is not paid. In each of these questions the State has a direct interest, and through its representatives in court has the right to be heard. They must be settled before the litigation can be said to be at an end.

The amount of the debt and the proportion of stock applicable to its payment are, therefore, still open for future adjudication between the parties. Thus far the court has done no more than declare that for the security of the payment of so much as is due, the plaintiff and those he represents have a lien upon their equitable proportion of the stock, and that the lien may be enforced by sale, if payment of the debt is not made. It has also declared its determination to order a sale, if payment of the debt is not made or satisfactorily provided for by April 1st, 1875. In order that proper action may be had when this time arrives, the master has been directed to state the account of the indebtedness to the plaintiff and those he represents, and of their proportion of securities pledged by the State. In this, as it seems to us, the court has acted upon the suggestion in *Forgay* v.

*Conrad,** and by an interlocutory order announced the opinion it had formed as to the rights of the parties and the principles of the decree it would finally render, leaving the entry of the final decree in form to be made when the amount due has been ascertained, and an apportionment of the stock made. In this way the rights of all parties can be protected and no injustice done.

In this connection it may not be improper to call the attention of the Circuit Courts to what was said by Chief Justice Taney in *Forgay* v. *Conrad*, as to the care which ought to be exercised in the preparation of decrees of this character. Much time of this court and expense of litigants will be saved if more attention is given to the form of decrees when entered.

APPEAL DISMISSED.